Jeffrey W. Dulberg (CA Bar No. 181200)
John W. Lucas (CA Bar No. 271038)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
Email: jdulberg@pszjlaw.com
       jlucas@pszjlaw.com
       jnolan@pszjlaw.com

*Attorneys for Bradley D. Sharp, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>Debtor. | Case No. 2:23-bk-10990-SK<br><br>Chapter 11 |
| BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>LIFE CAPITAL GROUP, LLC, a limited liability company, SHLOMO Y. RECHNITZ, individually and as a member of LIFE CAPITAL GROUP, LLC, YISROEL ZEV RECHNITZ, an individual, CHAIM MANELA, an individual, JONATHAN POLTER, an individual and as a manager of LIFE CAPITAL GROUP, and SECURITY LIFE OF DENVER LIFE INSURANCE COMPANY,<br><br>Defendants. | Adv No. 2:24-ap-_____-SK<br><br>**COMPLAINT**<br><br>**(1) Constructive Fraudulent Transfer (11 U.S.C. § 548)**<br>**(2) Constructive Fraudulent Transfer (11 U.S.C. § 544)**<br>**(3) Recovery of Constructive Fraudulent Transfers (11 U.S.C. § 550 and Cal. Civil Code § 3439.07)**<br>**(4) Accounting (11 U.S.C. § 542)**<br>**(5) Breach of Contract**<br>**(6) Injunction**<br>**(7) Avoidance of Preference – Rechnitz (11 U.S.C. § 547)**<br>**(8) Recovery of Preference -Rechnitz (11 U.S.C. § 550)**<br>**(9) Avoidance of Preference – Y. Rechnitz (11 U.S.C. § 547)**<br>**(10)     Recovery of Preference -Y. Rechnitz (11 U.S.C. § 550)**<br>**(11)     Avoidance of Preference – Manela (11 U.S.C. § 547)**<br>**(12)     Recovery of Preference -Manela (11 U.S.C. § 550)** |

Bradley D. Sharp ("**Plaintiff**" or "**Trustee**"), the duly appointed trustee for the chapter 11 estate of Leslie Klein (the "**Debtor**"), in support of his Complaint for Avoidance and Recovery of Fraudulent Transfers and Avoidance and Recovery of Preferential Transfers, and alleges as follows:

## OVERVIEW OF CLAIMS FOR RELIEF

1. This is an adversary proceeding brought pursuant to Sections 542, 544, 547, 548 of the Bankruptcy Code and Rules 7001(a), 7001(i), and 7001(g) of the Federal Rules of Bankruptcy Procedure.

2. The Debtor entered into the *Mutual Release of all Claims and Settlement Agreement*, dated December 5, 2022 (the "**LCG Settlement Agreement**") by and among Leslie Klein (the "**Debtor**"), Life Capital Group, LLC ("**LCG**"), Shlomo Y. Rechnitz ("**Rechnitz**"), and Jonathan Polter ("**Polter**" and together with LCG and Rechnitz, the "**LCG Defendants**").

3. On or around the same time, the Debtor entered in the *Mutual Release of all Claims and Settlement Agreement*, dated December 12, 2022 (the "Security Settlement Agreement" and together with the LCG Settlement Agreement, the "Settlement Agreements") by and among the Debtor, LCG, and Security Life of Denver Insurance Company ("Security Life").[1]

4. By this adversary proceeding, Plaintiff seeks to avoid the release by the Debtor under the LCG Settlement Agreement, as a constructive fraudulent transfer, of his rights and entitlements to distributions from the proceeds of life insurance policies governed by the terms and conditions of that certain *Limited Liability Operating Agreement of Life Capital Group, LLC*, dated June 1, 2011 (the "**LLC Agreement**") and recover the property and/or value therefrom.

---

[1] It is Plaintiff's understanding that Security Life tendered the insurance proceeds from the Gardner Policies and such proceeds were used to pay some or all of the other named defendants in this adversary proceeding. Plaintiff's action is directed at LCG, Rechnitz, and Polter, not Security Life. However, Plaintiff files this adversary against Security Life out of an abundance of caution on account of the release arising from the Security Settlement Agreement. If the relief sought by Plaintiff can be obtained through the sole adjudication of the LCG Settlement Agreement without including the Security Settlement Agreement, then Plaintiff is willing to withdraw the Complaint as it pertains to Security Life.

2

5.      Plaintiff is seeking to avoid above described fraudulent transfers of the Settlement Agreement and to recover the property, or the value thereof, in accordance with 11 U.S.C. §§ 544 (and applicable state law), 548, and 550

6.      Plaintiff seeks a declaratory judgment that LCG, Rechnitz, and Polter breached the LLC Agreement and the recovery of damages therefrom, each in accordance with applicable law in the state of California.

7.      The Settlement Agreements arose in response to an action commenced by the Debtor in the Los Angeles Superior Court, Case No. Case No. 22STCV18787 (the "**State Court Action**"), against the foregoing parties regarding the Debtor's rights and entitlements to the policy proceeds of the following life insurance policies: (a) policy numbers 1621379 and 1625579 (the "**Gardner Policies**"), (b) policy number 156208510 (the "**Goldstein Policy**"), (c) policy number 60030333 (the "**Holtzman Policy**"), and (d) policy number US0016022L (the "**Berke Klein Policy**" and together with the Gardner Policies and Holtzman Policy, the "**Settled LCG Polices**") that were each transferred to LCG by the Debtor and were each subject to and governed by the LLC Agreement.

8.      Plaintiff is seeking an accounting from LCG of LCG's maintenance of the LCG Policies that includes the capital contributions of Rechnitz and the Debtor on a policy-by-policy basis, any loans and the repayment thereof, all costs associated with the LCG Policies on a policy-by-policy basis, and all entitlements of Rechnitz and the Debtor to the proceeds of the Settled LCG Policies and the LCG Policies on a policy-by-policy basis, in accordance with 11 U.S.C. § 542(a).

9.      Plaintiff is seeking a declaratory judgment that the LCG Defendants breached the LLC Agreement and recovery of damages in an amount no less than $8,454,702.00 arising from such breach.

10.     Plaintiff is seeking an injunction, pursuant to Bankruptcy Rule 7001(g), compelling the LCG Defendants to distribute to the Debtor's estate the value of the Settled LCG Policies in accordance with the terms of the LLC Agreement.

11. Plaintiff is seeking to avoid a transfer of not less than $500,000.00 to Shlomo Y. Rechnitz on account of an antecedent debt, in accordance with 11 U.S.C. § 547, and recover such amount in accordance with 11 U.S.C. § 550.

12. Plaintiff is seeking to avoid a transfer of not less than $350,000.00 to Yisroel Zev Rechnitz on account of an antecedent debt, in accordance with 11 U.S.C. § 547, and recover such amount in accordance with 11 U.S.C. § 550.

13. Plaintiff is seeking to avoid a transfer of not less than $600,000.00 to Chaim Manela on account of an antecedent debt, in accordance with 11 U.S.C. § 547, and recover such amount in accordance with 11 U.S.C. § 550.

## THE PARTIES

14. Plaintiff brings this action solely in his capacity as the Trustee of the Debtor's bankruptcy estate.

15. Leslie Klein, the Debtor, is an individual who is a debtor in the above-captioned bankruptcy case and resides in Los Angeles, California.

16. Plaintiff is informed and believes that defendant Life Capital Group, LLC ("**LCG**") is a California limited liability company that was formed on or about April 8, 2011.

17. Plaintiff is informed and believes that defendant Shlomo Y. Rechnitz ("**Rechnitz**") is an individual who at all times herein maintained a residence in the Central District of California and is also one of the members of LCG.

18. Plaintiff is informed and believes that defendant Yisroel Zev Rechnitz ("**Yisroel**") is an individual who at all times herein maintained a residence in the Central District of California.

19. Plaintiff is informed and believes that defendant Chaim Manela ("**Manela**") is an individual who at all times herein maintained a residence in the Central District of California.

20. Plaintiff is informed and believes that defendant Jonathan Polter ("**Polter**") is an individual who maintains a residence at 2000 Town Center, Suite 1490, Southfield, Michigan 48075 and serves as manager of LCG.

21. Plaintiff is informed and believes that Security Life of Denver Insurance Company ("**Security Life**" and together with LCG, Rechnitz, Yisroel, and Polter, each a "**Defendant**" and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

together, the "**Defendants**") is a corporation organized under the laws of Colorado located at 7535 E. Hampden Ave, Ste. 400, Rm 446, Denver, CO 80231.

## JURISDICTION AND VENUE

22. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and §1334(b).

23. Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

24. This adversary proceeding is commenced pursuant to Rules 7001(a), (i), and (g) of the Federal Rules of Bankruptcy Procedure, 11 U.S.C. §§ 542, 544, 547, 548 and 550, and is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (H).

## STATEMENT OF FACTS SUPPORTING CLAIMS FOR RELIEF

**A.    Case Background**

25. On February 22, 2023 (the "**Petition Date**") [Bankr. Docket No. 1], the Debtor commenced a voluntary chapter 11 case in the United States Bankruptcy Court for the Central District of California (Los Angeles Division) Case No. 23-10990-SK (the "**Bankruptcy Case**").

26. On May 23, 2023, the Office of the United States Trustee (the "**UST**") filed a *Notice of Appointment of Chapter 11 Trustee* [Docket No. 151]. On May 24, 2023, the UST filed an *Application for Order Approving Appointment of Trustee and Fixing Bond* [Docket No. 154], which was approved by order entered the same day [Docket No. 155]. On that same day, the Trustee accepted his appointment [Docket No. 156], as the chapter 11 trustee of the Debtor's bankruptcy estate.

27. On March 8, 2023, the Debtor filed his schedules of assets and liabilities ("**Schedules**") and statement of financial affairs (the "**SOFAs**") [Bankr. Docket No. 34].

**B.    Formation of Life Capital Group, LLC**

28. LCG was formed on or about April 8, 2011, by the filing of a certificate of formation with the Secretary of State of California.

29. On or about June 1, 2011, the Debtor and Rechnitz executed the LLC Agreement, which, among other things, established the rules regarding the management, governance, capitalization, and distributions from LCG to its two sole "Members," the Debtor and Rechnitz.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

30. Polter serves as the "Manager" of LCG.

**C.    Purpose of Life Capital Group, LLC**

31. In connection with the formation of LCG, Plaintiff is informed and believes that the Debtor transferred or assigned to LCG approximately 22 life insurance policies (the "**LCG Policies**"). The Settled LCG Policies were among the LCG Policies.

32. Pursuant to the terms of the LLC Agreement, the Debtor's capital contribution into LCG consisted of the LCG Policies and the total amount of premiums payments and other costs the Debtor contributed toward his maintenance of the LCG Policies.

33. LCG, through the contributions made by Rechnitz to LCG, maintained the LCG Policies by making the required premium payments due under each of the LCG Policies.

**D.    Debtor's and Rechnitz's Capital Contributions Per the LLC Agreement**

34. Per the terms of Section 3.1 of the LLC Agreement, the Debtor's initial capital contribution is equal to the sum of the total amount of premiums and other costs associated with maintaining the LCG Policies prior to their transfer to LCG.

35. Per the terms of Section 3.1 of the LLC Agreement, Rechnitz's initial capital contribution was $3,800,000.00 as allocated among the various LCG Polices and the payment of premiums and respective costs associated with each LCG Policy.

36. Per the terms of Section 3.2 of the LLC Agreement, Rechnitz was obligated to provide the necessary capital to satisfy the premium payments and other costs associated with maintaining the LCG Policies.

**E.    Payment of LCG Policy Proceeds to the Debtor & Rechnitz Per the LLC Agreement**

37. Section 4.3 of the LLC Agreement outlines the terms and conditions of the amount and timing of distributing the proceeds of matured LCG Policies to both Rechnitz and the Debtor.

38. Section 4.3(a) of the LLC Agreement provides that upon the death of an insured covered by a LCG Policy, the proceeds of such LCG Policy are first paid to Rechnitz in an amount equal to the "Rechnitz Amount."

6

39. Per the terms of the LLC Agreement, the Rechnitz Amount means "(x) the total amount of Capital Contributions made by Rechnitz related to such [LCG] Policy (y) the Priority Return."

40. Section 4.3(b) of the LLC Agreement provides that upon the death of an insured covered by a LCG Policy, the proceeds of such LCG Policy are next paid to satisfy any outstanding loans, and then after the loans are paid in full the proceeds of such LCG Policy are next paid to the Debtor in amount equal to the "Klein Amount."

41. Per the terms of the LLC Agreement, the Klein Amount means "(x) the total amount of Capital Contributions made by Klein related to such Policy and (y) the Priority Return for Klein on such Policy."

42. Section 4.3(c) of the LLC Agreement provides that any remaining proceeds from the LCG Policies are divided evenly between the Debtor and Rechnitz.

### F. The LCG Settlement Agreement

43. As set forth in the Exhibit A to the LCG Settlement Agreement, the settlement encompassed the policy proceeds of arising from the Gardner Policies, which equaled $10,316,132.00 and matured upon the date that the second insured died.

44. The LCG Settlement Agreement also included the settlement of the Debtor's distribution from the Goldstein Policy in the amount of $1,503,945.21, the Holzman Policy in the amount of $8,000.000.00, and the Berke Klein Policy in the amount of $2,929,940.00.

45. In total, the proceeds from Settled LCG Policies equaled $22,750,017.00 (the "**Settled Policy Proceeds**").

46. Of the Settled Policy Proceeds, the Debtor purportedly received or was credited with respect to other debts a total approximate amount of $3,697,816.71.

47. Had LCG distributed the Settled Policy Proceeds in accordance with the terms of the LLC Agreement, the Plaintiff believes that the Debtor was entitled to no less than $8,454,702.00.

48. Per the terms of the LCG Settlement Agreement, Klein released (the "**Klein Release**") Rechnitz, Polter, and LCG, among others, with respect to any claims "in any way

7

related to the Klein Action [*i.e.*, the State Court Action], the Din Torah, and/or LCG, **including any challenge to any accounting or accounting conventions or calculations stated or implied therein or in Exhibit A hereto, Death Benefits, and Policies**."

49. Per the terms of the LCG Settlement Agreement, Rechnitz, Polter, and LCG did **not** provide any form of a release to the Debtor.

### G. The Preferential Payments or Transfers

50. Using the LCG Defendants' accounting, Exhibit A to the LCG Settlement Agreement reflects that the Debtor was entitled to $3,697,816.71.

51. The Debtor did not receive $3,697,816.71.

52. Instead, the $3,697,816.71 proceeds payable to the Debtor under the LCG Settlement Agreement were allegedly distributed as follows:

   a. $1,250,000.00 by check to the Debtor.
   b. $500,000.00 by check to the Debtor in six months after the settlement.
   c. $500,000.00 by check to Rechnitz on account of a debt.
   d. $350,000.00 by check to Yisroel on account of a debt.
   e. $600,000.00 by check to Manela on account of a debt.
   f. $497,816.71 to a reserve account maintained by LCG per the terms of the LLC Agreement.

53. Of the $3,697,816.71 in proceeds from the LCG Settlement Agreement, $500,000.00 was used to pay an outstanding debt owed to Rechnitz.

54. Of the $3,697,816.71 in proceeds from the LCG Settlement Agreement, $350,000.00 was used to pay an outstanding debt owed to Yisroel.

55. Of the $3,697,816.71 in proceeds from the LCG Settlement Agreement, $600,000.00 was used to pay an outstanding debt owed to Manela; however, the Debtor was entitled to retain every dollar of the $600,000.00 that the Debtor was able to reduce from the debt payable to Manela.

56. The Debtor's Schedules and SOFA did not disclose the LCG Settlement Agreement.

57. The Debtor's Schedules and SOFA did not disclose the three transfers described in Paragraphs 53-55 hereof.

### FIRST CLAIM FOR RELIEF

**(Avoidance of LCG Settlement Agreement as Constructively Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B))**

58. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

59. Per the terms of the LCG Settlement Agreement, the Debtor did not receive consideration and/or did not receive reasonably equivalent value in exchange for the Klein Settlement Payment and the Klein Release in light of the terms and conditions of the Debtor's entitlements under the LCC Agreement.

60. Plaintiff is informed and believes that at the time the Debtor entered into the LCG Settlement Agreement, the Debtor (a) was insolvent on the date the LCG Settlement Agreement became effective or became insolvent as a result of the Debtor's entry into the LCG Settlement Agreement, (b) was engaged or was about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (c) intended to incur, or reasonably should have believed that it would incur, debts beyond their ability to pay as they came due.

61. Accordingly, the LCG Settlement Agreement is avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. § 548(a)(1(B).

### SECOND CLAIM FOR RELIEF

**(Avoidance of LCG Settlement Agreement as Constructively Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code)**

62. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

63. Plaintiff is informed and believes, and, based thereon alleges, that there is at least one creditor of the Debtor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code, or that is not allowable only under section 502(e) of the Bankruptcy Code, that

may avoid the LCG Settlement Agreement, pursuant to California Code of Civil Procedure §§ 3439.04(2) and 3439.05.

64. At the time of the Debtor's entry into the LCG Settlement Agreement, the Debtor: (a) was insolvent, or became insolvent as a result of the LCG Settlement Agreement; (b) was engaged in the business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; and/or (c) intended to incur, or believed that he would incur, debts that would be beyond the Debtor's ability to pay as such debts as they matured.

65. The Plaintiff may avoid the LCG Settlement Agreement, pursuant to section 544(b) of the Bankruptcy Code and Sections 3439.04(a)(2) and 3439.05 of California Civil Code.

### THIRD CLAIM FOR RELIEF

**(Recovery of Transfers Pursuant to 11 U.S.C. § 550 and Cal. Civil Code § 3439.07)**

66. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

67. Having avoided the LCG Settlement Agreement, the Plaintiff is entitled to recover from Rechnitz, LCG, and Polter the value the Debtor was entitled per the terms of the LLC Agreement, pursuant to 11 U.S.C. § 550 and/or Cal. Civil Code § 3439.07.

### FOURTH CLAIM FOR RELEIF

**(Accounting of LCG, Including the Debtor's Entitlements Thereunder, Pursuant to 11 U.S.C. § 542(a))**

68. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

69. As forth herein, the LLC Agreement provides for the maintenance of the LCG Policies, which includes the Settled LCG Policies, and terms and conditions under which Rechnitz and the Debtor are entitled to receive the proceeds from such policies.

70. Pursuant to section 542(a) of the Bankruptcy Code, Plaintiff is seeking an accounting from LCG of the capital contributions made by Rechnitz and the Debtor, the premiums and other costs there were paid for each of the LCG Policies by Rechnitz and the Debtor, and

Rechnitz's and the Debtor's respective entitlements to the proceeds of the LCG Policies, each on a policy-by-policy basis.

### FIFTH CLAIM FOR RELIEF

**(Breach of Contract of the LLC Agreement, Pursuant to Bankruptcy Rule 7001(a) and (i))**

71. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

72. By reason of the foregoing, Rechnitz, LCG, and Polter each breached the LLC Agreement by failing to distribute the proceeds from the Settled LCG Policies in accordance with the terms and conditions of the LLC Agreement.

73. By reason of the foregoing, Rechnitz, LCG, and Polter have caused damage to the Debtor's estate, in an amount, as nearly as can now be estimated, no less than $8,454,702.00, plus the costs and expenses of initiating and continuing this adversary proceeding.

### SIXTH CLAIM FOR RELIEF

**(Injunction, Pursuant to Bankruptcy Rule 7001(g), Compelling Rechnitz, LCG, and Polter to Comply with the Terms of the LLC Agreement)**

74. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

75. In accordance with the findings relating to the Fourth Claim for Relief (i.e., the accounting), Plaintiff seeks an injunction that compels LCG, Rechnitz, and Polter to comply with the terms of the LLC Agreement, including, but not limited to, turning over any and all amounts that the Debtor's estate are entitled to per the terms of the LLC Agreement.

### SEVENTH CLAIM FOR RELIEF

**(As to Rechnitz For Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547)**

76. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

77. All of the $3,697,816.71 in LCG Settlement Proceeds were not transferred to the Debtor on or after December 5, 2022, in connection with the closing of such settlement.

78. Instead, $500,000.00 of the $3,697,816.71 (*i.e.*, cash that the Debtor was entitled to) was transferred to Rechnitz. 11 U.S.C. § 547(b)(1).

79. The LCG Settlement Agreement reflects that the $500,000 transfer to Rechnitz was for or on account of an antecedent debt owed by the Debtor before the $500,000 transfer was made. 11 U.S.C. § 547(b)(2).

80. The $500,000.00 transfer to Rechnitz was made while the Debtor was insolvent. Plaintiff is entitled to a presumption of insolvency for any transfer made by the Debtor or for his benefit make on or before the 90 days prior to the Petition Date, pursuant to 11 U.S.C. § 547(f). 11 U.S.C. § 547(b)(3).

81. Debtor filed his voluntary chapter 11 petition on February 22, 2023. The $500,000.00 transfer to Rechnitz occurred on or after December 5, 2022. The $500,000.00 transfer to Rechnitz at issue, therefore, occurred within 90 days before the Petition Date. 11 U.S.C. § 547(b)(4).

82. As a result of the $500,000.00 transfer to Rechnitz, Rechnitz received more than he would have received if (i) the Bankruptcy Case was a case under chapter 7; (ii) the $500,000.00 transfer had not been made; and (iii) Rechnitz received payment of his debt under the provisions of the Bankruptcy Code. Unless set aside, the $500,000.00 transfer to Rechnitz would provide Rechnitz more than he would otherwise be entitled to receive. 11 U.S.C. § 547(b)(5).

83. In accordance with the foregoing, the $500,000.00 transfer to Rechnitz is avoidable, pursuant to 11 U.S.C. § 547(b), and Plaintiff is entitled to an order and judgment under 11 U.S.C. § 547 that the $500,000.00 transfer to Rechnitz is avoided.

## EIGHTH CLAIM FOR RELIEF

**(As to Rechnitz For Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)**

84. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

85. Plaintiff is entitled to avoid the $500,000.00 transfer to Rechnitz pursuant to 11 U.S.C. § 547(b).

86. Rechnitz is the initial transferee of the $500,000.00 transfer.

12

87. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the $500,000.00 transfer from Rechnitz, plus the costs of this action.

### NINTH CLAIM FOR RELIEF

**(As to Yisroel For Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547)**

88. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

89. All of the $3,697,816.71 in LCG Settlement Proceeds were not transferred to the Debtor on or after December 5, 2022, in connection with the closing of such settlement.

90. Instead, $350,000.00 of the $3,697,816.71 (*i.e.*, cash that the Debtor was entitled to) was transferred to Yisroel. 11 U.S.C. § 547(b)(1).

91. The LCG Settlement Agreement reflects that the $350,000.00 transfer to Yisroel was for or on account of an antecedent debt owed by the Debtor before $350,000 transfer was made. 11 U.S.C. § 547(b)(2).

92. The $350,000.00 transfer to Yisroel was made while the Debtor was insolvent. Plaintiff is entitled to a presumption of insolvency for any transfer made by the Debtor or for his benefit made on or before the 90 days prior to the Petition Date, pursuant to 11 U.S.C. § 547(f). 11 U.S.C. § 547(b)(3).

93. Debtor filed his voluntary chapter 11 petition on February 22, 2023. The $350,000.00 transfer to Yisroel occurred on or after December 5, 2022. The $350,000.00 transfer to Rechnitz at issue, therefore, occurred within 90 days before the Petition Date. 11 U.S.C. § 547(b)(4).

94. As a result of the $350,000.00 transfer to Yisroel, Yisroel would received more than Yisroel would have received if (i) the Bankruptcy Case was a case under chapter 7; (ii) the $350,000.00 transfer had not been made; and (iii) Yisroel received payment of Yisroel's debt under the provisions of the Bankruptcy Code. Unless set aside, the $500,000.00 transfer to Yisroel would provide Yisroel more than Yisroel would otherwise be entitled to receive. 11 U.S.C. § 547(b)(5).

95. In accordance with the foregoing, the $500,000.00 transfer to Yisroel is avoidable, pursuant to 11 U.S.C. § 547(b), and Plaintiff is entitled to an order and judgment under 11 U.S.C. § 547 that the $500,000.00 transfer to Yisroel is avoided.

**TENTH CLAIM FOR RELIEF**

**(As to Yisroel For Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)**

96. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

97. Plaintiff is entitled to avoid the $350,000.00 transfer to Yisroel pursuant to 11 U.S.C. § 547(b).

98. Yisroel is the initial transferee of the $350,000.00 transfer.

99. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the $350,000.00 transfer from Yisoel, plus the costs of this action.

**ELEVENTH CLAIM FOR RELIEF**

**(As to Manela For Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547)**

100. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

101. All of the $3,697,816.71 in LCG Settlement Proceeds were not transferred to the Debtor on or after December 5, 2022, in connection with the closing of such settlement.

102. Instead, at least $600,000.00 of the $3,697,816.71 (i.e., cash that the Debtor was entitled to) was transferred to Manela. 11 U.S.C. § 547(b)(1).

103. The LCG Settlement Agreement reflects that the $600,000.00 transfer to Manela was for or on account of an antecedent debt owed by the Debtor before the $600,000 transfer was made. 11 U.S.C. § 547(b)(2).

104. The $600,000.00 transfer to Manela was made while the Debtor was insolvent. Plaintiff is entitled to a presumption of insolvency for any transfer made by the Debtor or for his benefit make on or before the 90 days prior to the Petition Date, pursuant to 11 U.S.C. § 547(f). 11 U.S.C. § 547(b)(3).

105. Debtor filed his voluntary chapter 11 petition on February 22, 2023. The $600,000.00 transfer to Manela occurred on or after December 5, 2022. The $600,000.00 transfer to Manela at issue, therefore, occurred within 90 days before the Petition Date. 11 U.S.C. § 547(b)(4).

106. As a result of the $600,000.00 transfer to Manela, Manela received more than he would have received if (i) the Bankruptcy Case was a case under chapter 7; (ii) the $600,000.00 transfer had not been made; and (iii) Manela received payment of his debt under the provisions of the Bankruptcy Code. Unless set aside, the $600,000.00 transfer to Manela would provide Manela more than he would otherwise be entitled to receive. 11 U.S.C. § 547(b)(5).

107. In accordance with the foregoing, the $600,000.00 transfer to Manela is avoidable, pursuant to 11 U.S.C. § 547(b), and Plaintiff is entitled to an order and judgment under 11 U.S.C. § 547 that the $600,000.00 transfer to Manela is avoided.

### TWELFTH CLAIM FOR RELIEF

**(As to Manela For Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550)**

108. Plaintiff realleges and incorporates herein by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

109. Plaintiff is entitled to avoid the $600,000.00 transfer to Manela pursuant to 11 U.S.C. § 547(b).

110. Manela is the initial transferee of the $600,000.00 transfer.

111. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the $600,000.00 transfer from Manela, plus the costs of this action.

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1. On the First Claim for Relief for the avoidance of a constructive fraudulent transfer of the releases arising under the LCG Settlement Agreement, pursuant to 11 U.S.C. § 548(a)(1)(B).

2. On Second Claim for Relief for the avoidance of a constructive fraudulent transfer of the releases arising under the LCG Settlement Agreement, pursuant to 11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code.

3. On Third Claim for Relief recovery of the value the Debtor is entitled to recovery by virtue of the avoidance of the constructive fraudulent transfers under the First Claim for Relief and the Second Claim for Relief, pursuant to 11 U.S.C. § 550 and Cal. Civil Code § 3439.07.

4. On Fourth Claim for Relief for an accounting of LCG and the Debtor's entitlements thereunder, pursuant to 11 U.S.C. § 542(a).

5. On Fifth Claim for Relief a declaration that Rechnitz, LCG, and/or Polter breached the LLC Agreement and damages, expenses, and costs.

6. On Sixth Claim for Relief for an injunction compelling Rechnitz, LCG, and Polter to comply with the terms of the LLC Agreement and turnover any all entitlements payable to the Debtor's estate.

7. On the Seventh Claim for Relief, avoidance of the $500,000.00 transfer to Rechnitz.

8. On the Eighth Claim for Relief, recovery of the $500,000.00 transfer to Rechnitiz.

9. On the Ninth Claim for Relief, avoidance of the $350,000.00 transfer to Yisroel.

10. On the Tenth Claim for Relief, recovery of the $350,000.00 transfer to Yisroel.

11. On the Eleventh Claim for Relief, avoidance of the $600,000.00 transfer to Manela.

12. On the Twelfth Claim for Relief, recovery of the $600,000.00 transfer to Manela.

13. For costs of suit incurred herein and pre-judgment interest.

14. For such other and further relief as the Court may deem just and proper.

Dated: January 23, 2025           PACHULSKI STANG ZIEHL & JONES LLP

By  /s/ John W. Lucas
    Jeffrey W. Dulberg
    John W. Lucas
    Jeffrey P. Nolan

    *Attorneys for Bradley D. Sharp,
    Chapter 11 Trustee*