United States Bankruptcy Court

Central District of California

Sharp,
    Plaintiff

Life Capital Group, LLC,
    Defendant

Adv. Proc. No. 25-01020-NB

# CERTIFICATE OF NOTICE

District/off: 0973-2      User: admin      Page 1 of 2
Date Rcvd: Aug 22, 2025      Form ID: pdf031      Total Noticed: 0

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 24, 2025:**
NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).
NONE

## BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
| --- | --- | --- |
| pla | | Bradley D. Sharp |
| dft | | Chaim Manela |
| intp | | Courtesy NEF |
| dft | | Jonathan Polter |
| dft | | Life Capital Group, LLC |
| dft | | Security Life Of Denver Life Insurance Company |
| dft | | Shlomo Y. Rechnitz |
| dft | | Yisroel Zev Rechnitz |

TOTAL: 8 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

## NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Aug 24, 2025      Signature:      /s/Gustava Winters

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 22, 2025 at the address(es) listed below:

| Name | Email Address |
| --- | --- |
| Beth Ann R. Young | on behalf of Interested Party Courtesy NEF bry@lnbyg.com bry@lnbyb.com |
| Bradley D. Sharp (TR) | bsharp@dsi.biz |
| Jeffrey W Dulberg | on behalf of Plaintiff Bradley D. Sharp jdulberg@pszjlaw.com |
| John W Lucas | on behalf of Trustee Bradley D. Sharp (TR) jlucas@pszjlaw.com ocarpio@pszjlaw.com |

| | | |
|---|---|---|
| District/off: 0973-2 | User: admin | Page 2 of 2 |
| Date Rcvd: Aug 22, 2025 | Form ID: pdf031 | Total Noticed: 0 |

John W Lucas
    on behalf of Plaintiff Bradley D. Sharp jlucas@pszjlaw.com ocarpio@pszjlaw.com

Lisa Patel
    on behalf of Defendant Yisroel Zev Rechnitz lpatel@lesnickprince.com
    jmack@lesnickprince.com;jnavarro@lesnickprince.com;lpatel@ecf.courtdrive.com

Lisa Patel
    on behalf of Defendant Shlomo Y. Rechnitz lpatel@lesnickprince.com
    jmack@lesnickprince.com;jnavarro@lesnickprince.com;lpatel@ecf.courtdrive.com

M. Jonathan Hayes
    on behalf of Defendant Chaim Manela jhayes@rhmfirm.com
    roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;gabriela@rhmfirm.com;russ@rhmfirm.com

Matthew A Lesnick
    on behalf of Defendant Yisroel Zev Rechnitz matt@lesnickprince.com matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew A Lesnick
    on behalf of Defendant Shlomo Y. Rechnitz matt@lesnickprince.com matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Matthew D. Resnik
    on behalf of Interested Party Courtesy NEF matt@rhmfirm.com
    roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com

Matthew D. Resnik
    on behalf of Defendant Chaim Manela matt@rhmfirm.com
    roksana@rhmfirm.com;russ@rhmfirm.com;sloan@rhmfirm.com;susie@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;rosario@rhmfirm.com;gabriela@rhmfirm.com;david@rhmfirm.com

Michael G D'Alba
    on behalf of Defendant Jonathan Polter mgd@lnbyg.com

Michael G D'Alba
    on behalf of Defendant Life Capital Group LLC mgd@lnbyg.com

Nikko Salvatore Stevens
    on behalf of Interested Party Courtesy NEF nikko@cym.law eService@cym.law,karen@cym.law

United States Trustee (LA)
    ustpregion16.la.ecf@usdoj.gov

TOTAL: 16

MATTHEW A. LESNICK (SBN 177594)
  matt@lesnickprince.com
LISA R. PATEL (SBN 341574)
  lpatel@lesnickprince.com
LESNICK PRINCE PAPPAS & ALVERSON LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA  90015
Telephone:  (213) 493-6496
Facsimile:   (213) 493-6596

Counsel for Defendants Shlomo Y. Rechnitz and Yisroel Zev Rechnitz

**FILED & ENTERED**

AUG 22 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis        DEPUTY CLERK

**CHANGES MADE BY COURT**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LESLIE KLEIN,<br><br>                    Debtor.<br>―――――――――――――――――<br>BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>                    Plaintiff,<br>     v.<br><br>LIFE CAPITAL GROUP, LLC, a limited liability company, SHLOMO Y. RECHNITZ, individually and as a member of LIFE CAPITAL GROUP, LLC, YISROEL ZEV RECHNITZ, an individual, CHAIM MANELA, an individual, JONATHAN POLTER, an individual and as a manager of LIFE CAPITAL GROUP, and SECURITY LIFE OF DENVER LIFE INSURANCE COMPANY,<br><br>                    Defendants. | Case No. 2:23-bk-10990-NB<br><br>Chapter 11<br><br>Adv. No. 2:25-ap-01020-NB<br><br>**ORDER GRANTING <u>IN PART</u> DEFENDANTS SHLOMO Y. RECHNITZ AND YISROEL ZEV RECHNITZ'S MOTION TO COMPEL ARBITRATION BEFORE THE RABBINICAL COUNCIL OF CALIFORNIA AND FOR A STAY**<br><br>―――――――――――――――<br>Hearing:<br>Date:     August 12, 2025<br>Time:    2:00 p.m.<br>Place:   Courtroom 1545<br>            255 E. Temple St.<br>            Los Angeles, CA 90012 |

Defendants Shlomo Y. Rechnitz and Yisroel Zev Rechnitz (together, "Defendants") filed their "Motion to Compel Arbitration Before the Rabbinical Council of

1

California and for a Stay; Joinder in Defendants Life Capital Group, LLC and Jonathan Polter's Motion to Compel Arbitration and for Stay" [Dkt. No. 28] (the "Arbitration Motion").

The Arbitration Motion initially came on for hearing on May 6, 2025, at 1:00 p.m., and after considering the arguments of counsel, the Court continued the hearing to June 24, 2025, at 2:00 p.m.  The Court convened the continued hearing on June 24, 2025, and after considering the arguments of counsel, further continued the hearing to August 5, 2025, at 2:00 p.m.  The Court convened the continued hearing on August 5, 2025, and after considering the arguments of counsel, further continued the hearing to August 12, 2025, at 2:00 p.m.  Appearances at all hearings were made as reflected in the Court's record.

The Court, having considered the Arbitration Motion; the related arbitration motion filed by Defendants Life Capital Group, LLC ("Life Capital Group") and Jonathan Polter [Dkt. No. 27]; the Opposition to the Arbitration Motion filed by Plaintiff Bradley D. Sharp, Chapter 11 Trustee ("Plaintiff") [Dkt. No. 40]; the Reply on the Arbitration Motion [DE 43]; Plaintiff's Motion for Leave to Amend Complaint (the "Motion to Amend") [DE 65]; Defendants' Opposition to the Motion to Amend [Dkt. No. 72], the Trustee's Reply on the Motion to Amend [Dkt. No. 74]; the Declaration of Nicholas R. Troszak in Support of the Trustee's Fraudulent Transfer Claims [Dkt. No. 64]; and the Declaration of Jonathan Polter in Support of Supplemental Submission of Life Capital Group, LLC, Shlomo Y. Rechnitz, and Yisroel Zev Rechnitz in Support of Motions to Compel Arbitration Re: The Court's June 27, 2025 Order (Dkt. No. 57) [Dkt. No. 71], and all other pleadings and papers filed in support of the motions and in opposition to the motions, the entire record in this adversary proceeding, the arguments and statements of counsel at the hearings on the Arbitration Motion, and the competing proposed orders lodged by counsel for the Life Capital Group and Mr. Polter [Dkt. No. 88] and the Trustee [Dkt. No. 89], and good cause appearing,

IT IS ORDERED that:

1. The Arbitration Motion is granted as set forth in the Court's Tentative Ruling, a copy of which is attached hereto as Exhibit A and made a part of this Order.

1       2.    Plaintiff, Bradley Sharp in his capacity as chapter 11 trustee, and Defendant Shlomo Y. Rechnitz are hereby compelled to binding arbitration before the Rabbinical Council of California (the "RCC") in accordance with the RCC's commercial arbitration rules, <u>to arbitrate all contractual disputes by and between the parties under the Limited Liability Operating Agreement of Life Capital Group, LLC, dated June 1, 2011 (the "**LLC Agreement**"), including in respect to the "Rechnitz Amount," "Klein Amount," "Capital Contribution" and the "Priority Return" as such terms are defined in the LLC Agreement, as well as the allocation of proceeds from matured life insurance policies pursuant to the LLC Agreement, and any related contractual disputes by and between these parties, or any of them, arising out of or related to the LLC Agreement as alleged in the above-captioned adversary proceeding.</u> ~~solely with respect to the distributions that Shlomo Rechnitz and Leslie Klein are entitled to pursuant to Articles III and IV of the *Limited Liability Operating Agreement of Life Capital Group, LLC*, dated June 1, 2011 (the "LLC Agreement"); *provided, however*, the RCC's focus on the allocation of proceeds from matured life insurance policies pursuant to Articles III and IV of the LLC Agreement shall not preclude the parties from relying on, or the RCC from interpreting, any other provisions of the LLC Agreement~~.

      3.    For the avoidance of doubt, <u>and as stated in Tentative Ruling, the RCC shall arbitrate the parties' interpretations of the LLC Agreement as described above which is necessary for the Bankruptcy Court to determine whether "Plaintiff/Trustee could establish a proper basis to proceed on his fraudulent and preferential transfer claims" as alleged in the Amended Complaint (adv. dkt. 83), but shall not arbitrate the fraudulent and/or preferential transfer causes of action asserted in the Amended Complaint. In limiting the litigation before the RCC as set forth above, this Bankruptcy Court emphasizes that it does not seek in any way to impinge on the authority of the RCC. Rather, this Bankruptcy Court takes seriously its obligations, as a subordinate unit of the District Court, to manage this bankruptcy case. Those obligations include taking into consideration the interests of</u>

3

1 | <u>those creditors who are not parties to the LLC Agreement or to the arbitration, and</u>
2 | <u>preserving the bankruptcy estate by placing limits on any relief from the automatic stay that</u>
3 | <u>Congress has mandated (11 U.S.C. 362(a) & (d)).  In the event that the RCC declines to</u>
4 | <u>arbitrate this matter, the parties may file appropriate papers with this Bankruptcy Court</u>
5 | <u>seeking further modification or revision to the terms of this order or other appropriate relief.</u>
6 | ~~the RCC shall not arbitrate any of the causes of action asserted in the *Amended Complaint*~~
7 | ~~[Adv. Docket No. 83] (the "Amended Complaint"); *provided*, *however*, the foregoing~~
8 | ~~prohibition shall not preclude the RCC from making a ruling with respect to the distribution~~
9 | ~~of life insurance policy proceeds as set forth in Paragraph 2 above.~~
10 |         4.    Upon the conclusion of the arbitration, the parties shall file a notice or
11 | copy of the arbitration decision (the "Arbitration Notice") with the Court.
12 |         5.    The above captioned adversary proceeding is stayed until the
13 | arbitration before the RCC has been completed, and all defendants in the above-captioned
14 | adversary proceeding are required to respond to the Amended Complaint no later than 30
15 | days after the filing of the Arbitration Notice or as otherwise ordered by the Court.
16 |         6.    The parties must file a joint status report no later than October 7, 2025.
17 |         7.    The status conference is continued to October 21, 2025 at 2:00 p.m.
18 |                                   ###

Date: August 22, 2025

Neil W. Bason
United States Bankruptcy Judge

4

# EXHIBIT A

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025 — Hearing Room 1545

**2:00 PM**
**2:23-10990    Leslie Klein**                                     **Chapter 11**
Adv#: 2:25-01020    Sharp v. Life Capital Group, LLC et al

#4.00    Cont'd hrg re: Motion to Compel Arbitration Before the Rabbinical Council of California and for a Stay; Joinder in Defendants Life Capital Group, LLC and Jonathan Polter's Motion to Compel Arbitration and for a Stay
fr. 5/6/25, 6/24/25, 8/5/25

Docket    28

**Tentative Ruling:**

**Tentative Ruling for 8/12/25:**
Please see the tentative ruling for Calendar No. 3 on today's calendar (8/12/25 at 2:00 p.m.).

**[PRIOR TENTATIVE RULING(S) OMITTED]**

| Party Information |
|---|

**Debtor(s):**
Leslie Klein                          Pro Se

**Defendant(s):**
Life Capital Group, LLC               Represented By
                                      Michael G D'Alba

Shlomo Y. Rechnitz                    Represented By
                                      Matthew A Lesnick

Yisroel Zev Rechnitz                  Represented By
                                      Matthew A Lesnick

Chaim Manela                          Represented By
                                      Matthew D. Resnik
                                      M. Jonathan Hayes

Jonathan Polter                       Represented By
                                      Michael G D'Alba

8/12/2025 9:06:22 AM            Page 66 of 76

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025 — Hearing Room 1545

**2:00 PM**
**2:23-10990    Leslie Klein**                                     **Chapter 11**
Adv#: 2:25-01020    Sharp v. Life Capital Group, LLC et al

#3.00    Cont'd hrg re: Motion To Compel Arbitration Before The Rabbinical Council Of California And For A Stay
fr. 5/6/25, 6/24/25, 8/5/25

Docket    26

**Tentative Ruling:**

**Tentative Ruling for 8/12/25:**
Grant the Motions to Compel Arbitration (dkt. 26 & 28, each an "Arbitration Motion" and together, the "Arbitration Motions") as set forth below. <u>Appearances required</u>.

Proposed order(s): Unless otherwise ordered, Defendants Life Capital Group & Mr. Rechnitz are directed to lodge a proposed order(s) for each Arbitration Motion via LOU within 7 days after the hearing date (per LBR 9021-1(b)(1)(B)) and attach a copy of this tentative ruling, thereby incorporating it as this Court's actual ruling.

If you are making an appearance, you may do so (1) in person in the courtroom, unless the Court has been closed (check the Court's website for public notices), (2) via ZoomGov video, or (3) via ZoomGov telephone. For ZoomGov instructions for <u>all</u> matters on calendar, please see page 1 of the posted Tentative Rulings.

<u>Key documents reviewed</u> (in addition to motion papers): Notice of citation to unpublished authority (adv. dkt. 27); Omnibus opposition of Plaintiff/Trustee (adv. dkt. 40); Defendants' replies (adv. dkt. 42-44), Scheduling order (adv. dkt. 57), Plaintiff/Trustee's waterfall analysis (adv. dkt. 64), Defendants' waterfall analysis (adv. dkt. 71)

<u>Analysis</u>:
This Court's tentative ruling for 5/6/25 (copied below) summarized the

8/12/2025 9:06:22 AM            Page 47 of 76

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025 — Hearing Room 1545

**2:00 PM**
**CONT...    Leslie Klein**                                     **Chapter 11**

relevant factual background, the parties' arguments, the applicable legal standard, and this Court's preliminary tentative ruling on the Arbitration Motions. Accordingly, this Court incorporates that summary/analysis herein, except as summarized immediately below.

The gist of this Court's tentative ruling was that (x) bankruptcy issues <u>appeared</u> to largely predominate the parties' dispute, (y) this Court has discretion to determine whether compelling arbitration would conflict with the underlying purposes of the Bankruptcy Code, and, (z) even if Defendants were able to persuade this Court that contractual disputes underlie all of Plaintiff/Trustee's claims and could <u>potentially</u> predominate at some point, it was premature at that point for this Court to reach any such conclusion (i) without first having persuasive disclosure by Defendants of evidence that there were substantial and good faith disputes about the terms or enforceability of the LLC Agreement, and (ii) without an opportunity for Trustee to investigate, using all of the powers and tools available in bankruptcy.

This Court highlighted the opaqueness of the parties' arguments regarding the actual nature of (x) the disputes underlying the Settlement Agreement, and (y) the parties' respective positions regarding the claims asserted in Plaintiff/Trustee's complaint. This Court also noted that the necessary calculations underlying the Settlement Agreement appear to involve relatively straightforward addition, subtraction, and multiplication.

Since that time, the matters have been continued a number of times and this Court has heard and considered (x) the parties' oral arguments on the record, (y) the parties' respective "waterfall" analysis of distributions under the LLC Agreement and the Settlement Agreement (adv. dkt. 64 & 71), and (z) the representations on the record by Mr. Troszak, Plaintiff/Trustee's forensic accountant, at the hearing on 8/5/25. The parties' counsel also confirmed on the record at the hearing on 8/5/25 that, in their view, no further discovery was necessary for purposes of these Arbitration Motions. That is significant because one of the principal grounds for the 5/6/25 tentative ruling not to grant the Arbitration Motions at that time was that Defendants were being opaque and Trustee might need the discovery tools available in this bankruptcy case.

Based on the foregoing arguments and evidence, this Court understands the parties disputes to be as follows. Plaintiff/Trustee does not dispute that the redline notations on Exhibit 3 of Life Capital's waterfall

8/12/2025 9:06:22 AM            Page 48 of 76

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025 — Hearing Room 1545

**2:00 PM**
**CONT...    Leslie Klein**                                     **Chapter 11**

analysis (adv. dkt. 71, Ex. 3, PDF p. 60) accurately reflect the difference between the parties' respective waterfall calculations - *i.e.,* Plaintiff/Trustee disputes that the LLC Agreement entitled Mr. Rechnitz to reimbursement/payment of (x) $3.8 million dollars on account of his initial deemed capital contribution, plus 12% interest accruing as of the effective date of the LLC Agreement, and (y) his annual administrative expenses, plus 12%, off the top before any payments would be distributed to lenders and/or Debtor. That interpretation is supported by the statements made by Mr. Troszak on the record at the 8/5/25 hearing:

> Mr. Troszak: The $3.8 [million] is referenced in the LLC Agreement but it's never, there's not a check cut at the beginning of this creation of this LLC and $3.8 million dollars is not deposited into a Life Capital bank account ... And, in the Settlement Agreement, they took the $3.8 million and charged compounded interest from the date of the origination of the LLC of the company. Any they compounded interest on that at 12% like clockwork every year, for six years, until a policy is matured. A policy matures and then in this Settlement Agreement they calculate here is the $3.8 [million], here is all the compounded interest for six years, and we're going to take that off the top to start you know the flow of funds right. Well, **when you read the LLC Agreement, it never mentions when a policy matures, it never references paying back a capital contribution**. It refers to paying back the premiums for each policy, plus the preferred return. And that's the way we did the waterfall. **We don't believe you should get compounded interest on $3.8 million dollars from the beginning of the LLC**. So, I think that is the dispute. [Audio recording from 8/5/25 hearing beginning 2:52:05 p.m.] (emphasis added).

Although it is unclear what Plaintiff/Trustee's basis is for asserting that Mr. Rechnitz is not entitled to repayment of the $3.8 million, plus 12% interest, in view of the Sections 3.1, 4.3(a) and Ex. A of the LLC Agreement (adv. dkt. 26, at PDF pp. 39, 41 & 63), or what Plaintiff/Trustee's basis is to dispute the reimbursement of Mr. Rechnitz's administrative expenses payments, plus interest (*e.g.,* was there double counting? improper expense charges?, etc.), it appears that the "center of gravity" of the parties' dispute

8/12/2025 9:06:22 AM            Page 49 of 76

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                          Hearing Room   1545

**2:00 PM**
**CONT...**     **Leslie Klein**                                                    **Chapter 11**

starts with their differing interpretations regarding the implementation of the LLC Agreement, which is a contract dispute.

The tentative ruling is that it is only *after* Plaintiff/Trustee can establish that his interpretation is correct (*i.e.*, that Mr. Rechnitz was not entitled to receive payment on account of the $3.8 million and administrative expenses, plus interest), that Plaintiff/Trustee could establish a proper basis to proceed on his fraudulent and preferential transfer claims.

Based on the foregoing, the tentative ruling is that contractual disputes regarding the interpretation of the LLC Agreement underlie Plaintiff/Trustee's claims and predominate the overall dispute. Therefore, Section 12.1 of the LLC Agreement (adv. dkt. 26, PDF p. 54) is enforceable in this bankruptcy case, and arbitration of those issues is required before the Rabbinical Counsel.

The tentative ruling is that the preference claims depend, to at least some extent, on the contractual analysis. Alternatively, the preference claims are smaller dollar amounts and do not predominate over the mostly contractual nature of the disputes. The foregoing tentative rulings as to the preference issues are reinforced by the questions that Defendants have raised about whether the funds that were transferred really were Debtor's property, as a contractual matter or under applicable nonbankruptcy law.

In addition, the tentative ruling is that any voluntary dismissal of Plaintiff/Trustee's contract claims do not change the analysis. First, this Court is not persuaded by Plaintiff/Trustee's position that such voluntary dismissal undermines Defendants' arguments, because, regardless of whether the contract disputes form the basis of any legal claims for recovery, the underlying predominant issues are matters of contractual interpretation, for the reasons set forth above. Second, nor is this Court persuaded by Defendants' arguments that any voluntary dismissal of Plaintiff/Trustee's contract claims results in an automatic, independent reason to grant their arbitration motions, because not pursuing claims is not the same as conceding that all underlying facts are as Defendants allege, for purposes of fraudulent transfer and preference analysis.

Alternatively, the tentative ruling is that even if bankruptcy issues predominate, enforcing the arbitration provision in the LLC Agreement at this stage of the litigation will not conflict with the underlying purpose of the Bankruptcy Code because, based on this Court's current understanding of the parties' disputes now that their "waterfall" analysis and oral arguments have

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                          Hearing Room   1545

**2:00 PM**
**CONT...**     **Leslie Klein**                                                    **Chapter 11**

been presented, it would be a more efficient use of the parties' and this Court's time and resources for the parties' contractual disputes to be resolved by the Rabbinical Counsel before expending any additional time litigating the fraudulent and preferential transfer issues in this Court.

**[TENTATIVE RULINGS FOR 8/5/25 AND 6/24/25 OMITTED]**

**Tentative Ruling for 5/6/25:**
Decline at this time to grant the motions to compel arbitration (adv. dkt. 26 & 28, each an "Arbitration Motion," and together, the "Arbitration Motions") and continue this hearing to provide Plaintiff/Trustee an opportunity to conduct discovery. Appearances required.

> Proposed order(s): Unless otherwise ordered, Plaintiff/Trustee is directed to lodge proposed order(s) on each of the foregoing matter(s) via LOU within 7 days after the hearing date (per LBR 9021-1(b)(1)(B)) and attach a copy of this tentative ruling, thereby incorporating it as this Court's actual ruling.

If you are making an appearance, you may do so (1) in person in the courtroom, unless the Court has been closed (check the Court's website for public notices), (2) via ZoomGov video, or (3) via ZoomGov telephone. For ZoomGov instructions for all matters on calendar, please see page 1 of the posted Tentative Rulings.

Key documents reviewed (in addition to motion papers): Notice of citation to unpublished authority (adv. dkt. 27); Omnibus opposition of Plaintiff/Trustee (adv. dkt. 40); Defendants' replies (adv. dkt. 42-44)

Analysis:
(1) Factual Background
    (a) Life Capital and the LLC Agreement
    Life Capital Group, LLC ("Life Capital") is a California limited liability corporation that was formed on or about April 8, 2011. Arbitration Motion (adv. dkt. 26) p. 5:20-21. Life Capital is governed by a limited liability company operating agreement (the "LLC Agreement"). *Id.* p. 6:3-6. As set forth in the LLC Agreement, Debtor holds a 50% membership interest in Life

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                          Hearing Room   1545

**2:00 PM**
**CONT...**     **Leslie Klein**                                                    **Chapter 11**

Capital and Shlomo Rechnitz holds the other 50% membership interest. *Id.* p. 5:21-23. Jonathan Polter is Life Capital's manager and has served in that capacity since approximately 2011. *Id.* p. 6:1-2.

The LLC Agreement contains an arbitration clause that provides:
> Section 12.1 Rabbinical Council. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California. [Arbitration Motion (adv. dkt. 26), Ex. 1, PDF p. 54].

(b) The Original Klein Action
On 6/7/22, Debtor filed a complaint (the "Original Klein Complaint") against Life Capital, Rechnitz, Polter, and others in Los Angeles County Superior Court (the "State Court"). Arbitration Motion (adv. dkt. 26), Ex. 6, PDF pp. 90-136. In that action (the "Original Klein Action"), Debtor sought to recover proceeds of certain matured life insurance policies pursuant to the terms of the LLC Agreement. *Id.* On 10/25/22, the State Court granted the defendants' motion to compel arbitration under the Rabbinical Council of California's procedures. *Id.*, p. 7:3-6 & Ex. 4, PDF pp. 84-86.

On 12/5/22, Debtor, Rechnitz, Life Capital and Polter reached a settlement of Debtor's claims and executed a confidential settlement agreement (the "Settlement Agreement") in which the parties agreed on the terms and conditions concerning the distribution of proceeds from certain life insurance policies. Arbitration Motion (adv. dkt. 26), p. 13:8-10, Ex. 3, PDF pp. 75-82. Pursuant to the terms of the Settlement Agreement, Debtor dismissed the Original Klein Complaint with prejudice on 12/28/22. *Id.* p. 13:10-12 & Ex. 5, PDF p. 88. The Settlement Agreement contained an arbitration clause that is substantially similar to, if not broader than, the arbitration clause contained in the LLC Agreement. *Id.* p. 13:13-20 & Ex. 3, PDF p. 77.

(c) The Bankruptcy Case
On 2/22/23, less than three months after executing the Settlement Agreement, Debtor filed this chapter 11 Bankruptcy Case. On 5/17/23 Judge Sandra Klein (who previously presided over this case) issued an order directing the appointment of a chapter 11 trustee. Dkt. 142.

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                          Hearing Room   1545

**2:00 PM**
**CONT...**     **Leslie Klein**                                                    **Chapter 11**

(d) The Life Capital Action
On 1/23/25 Plaintiff/Trustee commenced this adversary proceeding in this Bankruptcy Court (Adv. No. 2:25-ap-01020-NB) (the "Life Capital Action") against Life Capital, Mr. Polter, Shlomo Rechnitz, Yisroel Zev Rechnitz ("Steve Rechnitz") and other parties (collectively, the "Defendants"), seeking to avoid and recover certain alleged fraudulent and preferential transfers effectuated by Debtor's pre-petition release of his rights and entitlements to distributions from the proceeds of life insurance policies governed by the terms and conditions of the LLC Agreement pursuant to the Settlement Agreement.

Plaintiff/Trustee's complaint ("Complaint") includes twelve claims for relief seeking (x) to avoid the Settlement Agreement as a constructive fraudulent transfer, (y) to avoid and recover certain transfers of an interest in the Debtor's property as preferences, and (z) for breach of contract and an accounting. Adv. dkt. 1.

(e) Motions to Compel Arbitration
Defendants Life Capital, Mr. Polter, Shlomo Rechnitz and Steve Rechnitz seek to compel arbitration of Plaintiff/Trustee's claims before the Rabbinical Council of California in accordance with the arbitration provisions contained in the LLC Agreement and Settlement Agreement. They argue that although many of Plaintiff/Trustee's claims are styled as avoidance claims, they are derivative of the breach of contract claims Debtor asserted in the Original Klein Action and are therefore non-core claims that must be compelled to arbitration. Arbitration Motion (adv. dkt. 26), pp. 16:19-22, p. 17:18-25 & pp. 20:15-21:23. Alternatively, Defendants argue that even if this Court determines that the claims are statutorily "core" (28 U.S.C. 157(b)), there is a Congressional policy strongly favoring enforcement of contractual arbitration provisions, and compelling the parties to participate in arbitration would not conflict with the underlying purposes of the Bankruptcy Code because Defendants are not creditors of the bankruptcy estate and have not filed proofs of claim. *Id.* pp. 18:3-19:20. They also argue that compelling arbitration would promote the policies of the Bankruptcy Code because it would avoid piecemeal litigation and the need for them to litigate their disputes before a third tribunal (*i.e.*, this Bankruptcy Court, in addition to the State Court and the Rabbinical Council). *Id.* pp. 19:22-20:14.

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                                                                     Hearing Room    1545

**2:00 PM**
**CONT...    Leslie Klein                                                                                              Chapter 11**

Defendant Steve Rechnitz, who is not a party to the LLC Agreement or Settlement Agreement, separately argues that Plaintiff/Trustee's claims against him should be arbitrated because Plaintiff/Trustee should be equitably estopped from seeking to obtain the benefit of those agreements while simultaneously opposing enforcement of the arbitration provisions contained within them. Arbitration Motion (adv. dkt. 28), pp. 4:14-7:2.

Plaintiff/Trustee argues that his claims are statutorily core or derivative of core claims, and this Court should exercise its discretion not to compel arbitration because doing so would conflict with the purpose and policies of the Bankruptcy Code in this case. Opp. (adv. dkt. 40) pp. 7:1-8:15. Specifically, Plaintiff/Trustee contends that enforcing arbitration will compromise his claims to the detriment of the estate and creditors and argues that this Bankruptcy Court is the proper forum to determine and centralize and resolve all bankruptcy-related issues. *Id.*, pp. 8:16-12:24. Plaintiff/Trustee also argues that he cannot be compelled to arbitrate his claims (x) under 11 U.S.C. 544(b) or California Civil Code section 3439.04 because Plaintiff/Trustee stands in the shoes of *creditors*, who are not signatories to the arbitration provisions, and (y) against Steve Rechnitz because he too was not a party to the LLC Agreement or Settlement Agreement. *Id.* pp. 10:18-11:2 & 16:22-17:12.

In reply, Defendants argue that, despite Plaintiff/Trustee's attempts to characterize the claims as predominately core, the breach of contract dispute is a threshold issue that must be determined before any forum can determine whether sufficient grounds exist to avoid any alleged fraudulent and/or preferential transfers. Replies (adv. dkt. 42) p. 5:15-20 & (adv. dkt. 43), pp. 3:4-6, 13:1-14. Defendants also contend that Plaintiff/Trustee has not carried his burden to show that compelling the parties to arbitration would inherently conflict with the purposes of the Bankruptcy Code because he offers only vague and unsupported arguments that the estate or its creditors would be harmed. Replies (adv. dkt. 42) p. 2:18-20 & (adv. dkt. 43) p. 8:11-9:19.

(2) Request for judicial notice

Defendants Life Capital and Jonathan Polter request that this Court take judicial notice of (i) the Original Klein Complaint, (ii) the docket in the Original Klein Action; (iii) the request for dismissal filed in that action; (iv) a minute order dated 10/25/22 entered in that action; (v) the motion to compel arbitration filed in that action; and (vi) a declaration filed in support that motion

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                                                                     Hearing Room    1545

**2:00 PM**
**CONT...    Leslie Klein                                                                                              Chapter 11**

to compel in that action. Arbitration Motion (adv. dkt. 26), p. 32 & Ex. 2, 4-8.

The tentative ruling is to grant the request and take judicial notice of the fact that these pleadings were filed in the Original Klein Action, the fact that they focus on alleged contractual disputes, and the fact that arbitration was compelled by the State Court (without objection), because those are all undisputed matters of public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) ("[u]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'").

(3) Legal standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. section 1 *et seq.*, establishes a "liberal federal policy favoring arbitration agreements." *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA "provides that agreements to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,' and that a court must stay a proceeding if it is satisfied that an issue in the proceeding is arbitrable under such agreement." *Id.* (quoting 9 U.S.C. section 2-3). Notwithstanding the foregoing, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In view of these Congressional policy considerations, the party opposing enforcement of an arbitration agreement bears the burden of demonstrating that the arbitration agreement should not be enforced. *Id.* at 227.

The Supreme Court has constructed a framework under which courts can analyze how the FAA and a particular statute interact. *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012) (citing *McMahon*, 482 U.S. 220, 226-227). To determine if Congress intended to override the FAA's policy favoring arbitration in a particular statute, courts must examine: (1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exist." *Id.*

In *Thorpe* the Ninth Circuit first addressed whether Congress intended to make an exception to the FAA for claims arising in bankruptcy proceedings and, as to the first two *McMahon* factors, concluded that "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting." 671 F.3d 1011, 1020-21.

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                                                                     Hearing Room    1545

**2:00 PM**
**CONT...    Leslie Klein                                                                                              Chapter 11**

The Ninth Circuit then considered the third *McMahon* factor – whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. *Thorpe*, 671 F.3d. 1011, 1021. As a threshold matter, the court noted that other circuits addressing the issue considered the distinction between core and noncore proceedings. *Id.* The court noted:

> In non-core proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement. In core proceedings, by contrast, the bankruptcy court, at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement. The rationale for the core/none-core distinction … is that non-core proceedings are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration, whereas core proceedings implicate more pressing bankruptcy concerns. [*Thorpe*, 671 F.3d 1011, 1020-21 (citations omitted)].

The Ninth Circuit concluded that although the core versus noncore distinction was relevant, it was not alone dispositive. *Thorpe*, 671 F.3d 1011, 1021. Rather, the Court ruled that "even in a core proceeding, the *McMahon* standard must be met – that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id.*

Therefore, when considering whether to compel arbitration, bankruptcy courts must consider whether the claims for relief in a complaint are core or noncore, and whether compelling arbitration would conflict with the underlying purposes of the Bankruptcy Code. *Thorpe*, 671 F.3d 1011, 1020-21. If the disputes at issue are core proceedings, arbitration may be denied if enforcement conflicts with underlying purposes of the Bankruptcy Code. *Id.* at 1021. Conversely, if the disputes involve noncore proceedings, existing case law weighs in favor of compelling arbitration. *Id.* "If both core and noncore matters are present, the court must determine whether bankruptcy issues predominate." *In re Huffman*, 486 B.R. 343 (Bankr. S.D. Miss. 2013) (citing *In re Gandy*, 299 F.3d 489, 497 (5th Cir. 2002)).

(4) <u>The tentative ruling is that Plaintiff/Trustee's claims appear to be predominately core</u>

A core proceeding is one that invokes a substantive right created by

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                                                                     Hearing Room    1545

**2:00 PM**
**CONT...    Leslie Klein                                                                                              Chapter 11**

federal bankruptcy law or a proceeding that could not exist outside of bankruptcy. *In re Eastport Assocs.*, 935 F.2d 1071, 1076 (9th Cir. 1991). Section 157(b)(2) of title 28 of the United States Code includes a non-exclusive list of core proceedings.

The tentative ruling is that Claims 1, 2, and 3 are statutorily core because they seek avoidance and recovery of constructively fraudulent transfers under 11 U.S.C. sections 548 and 550 and also section 544, incorporating California Civil Code section 3439.07. *See* 28 U.S.C. section 157(b)(2)(H) ("proceedings to determine, avoid, or recover fraudulent conveyances").

The tentative ruling is that Claim 4 is also core. That claim seeks to enforce the obligation of parties to "deliver to the trustee, and <u>account</u> for," property that the trustee may use, sell, or lease (11 U.S.C. 542(a), emphasis added), and Plaintiff/Trustee asserts that this encompasses an obligation to provide an accounting of "the capital contributions made by Rechnitz and the Debtor, the premiums and other costs there were paid for each of the [Life Capital] Policies by Rechnitz and the Debtor, and Rechnitz's and the Debtor's respective entitlements to the proceeds of the [Life Capital] Policies, each on a policy-by-policy basis." Plaintiff/Trustee's Complaint (adv. dkt. 1) p. 10:26-11:2. *See* 28 U.S.C. section 157(b)(2)(E) (turnover) & (O) (other proceedings affecting liquidation of assets etc.).

Defendants argue that an accounting is a remedy, not a claim for relief, citing *Schaffer Family Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1049 (C.D. Cal. 2015). But the tentative ruling is that – whether or not an accounting outside of the Bankruptcy Code is merely a remedy – within the context of 11 U.S.C. 542(a) an accounting is part of the substantive claim for relief. Alternatively, the tentative ruling is that if there is no such claim then it does not add any weight to Defendants' argument that the claims in Plaintiff/Trustee's Complaint are predominantly non-core.

The tentative ruling is that Claim 5 asserts a claim for breach of contract, which Plaintiff/Trustee does not dispute is governed by California law and is therefore noncore. *See* Opp (adv. dkt. 40), p. 5:13-17.

The tentative ruling is that Claim 6 seeks an injunction, which is a remedy, not a claim for relief. *See e.g., Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).

The tentative ruling is that Claims 7, 8, 9, 10, 11 and 12 are statutorily core because they seek avoidance and recovery of preferential transfers

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                           Hearing Room    1545

2:00 PM
CONT...        Leslie Klein                                                    Chapter 11
under 11 U.S.C. sections 547 and 550.  *See* 28 U.S.C. section 157(b)(2)(F) (preferences).
      The tentative ruling is that bankruptcy issues largely predominate the parties' dispute, so this Court has discretion to determine whether compelling arbitration would conflict with the underlying purposes of the Bankruptcy Code.  *Thorpe*, 671 F.3d 1011, 1020-21.  Alternatively, the tentative ruling is that even if contractual disputes might, in future, turn out to underlie all of Plaintiff/Trustee's claims and in that sense *potentially* predominate at some point, it is premature to reach any such conclusion (x) without first having persuasive disclosure by Defendants of evidence that there were substantial and good faith disputes about the terms or enforceability of the LLC Agreement, of such a value that they could amount to "reasonably equivalent value" for the Settlement Agreement, and (y) without an opportunity for Trustee to investigate, using all of the powers and tools available in bankruptcy, all as set forth below.

(5) Preliminary fraudulent transfer and preference issues
      This Court believes that it may help, in considering the issues in the following section of this tentative ruling, to keep in mind some examples.  As a preliminary matter, this Court notes that there is precedent for settlement agreements to be avoided as constructively fraudulent, or as an actual fraud on creditors, and payments under settlement agreements can constitute avoidable preferential payments.
      For example, this Court takes judicial notice that in the divorce context one spouse might have much better knowledge or substantial leverage over the other spouse, and it is not uncommon for the less knowledgeable or more desperate spouse to agree to a transfer of assets for much less than reasonably equivalent value.  Alternatively, spouses might have roughly equal willingness and ability to fight each other *ad nauseum*, but they might still decide that, as between paying their creditors or collusively dividing assets among themselves in such a way as to defraud creditors, they can put aside their differences long enough to accomplish the latter.
      Plaintiff/Trustee appears to believe that similar dynamics may be at play with the Defendants in entering into the Settlement Agreement.  In any event, whatever the motivations, settlement agreements can be avoidable, regardless of whether they were entered into innocently or collusively.  *See, e.g., Mejia v. Reed*, 3 Cal.Rptr.3d 390, 393 (Cal. Sup. Ct. 2003) ("the

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                           Hearing Room    1545

2:00 PM
CONT...        Leslie Klein                                                    Chapter 11
provisions of the UFTA apply to marital settlement agreements").
      Of course, Defendants are correct that *if* Debtor was owed less than (or equal to) whatever he received under the Settlement Agreement then presumably he received reasonably equivalent value and "there will be no [constructively fraudulent transfer] claims to pursue."  Arbitration Motion (adv. dkt. 26) p. 20:9-13.  But that assumes the conclusion, and it is not at all clear to this Court that the arbitrators would consent to adjudicate "reasonably equivalent value" or any other elements of Plaintiff/Trustee's claims in the Complaint.
      For that matter, it is not entirely clear to this Court whether Defendants want the arbitrators to decide <u>all</u> of Plaintiff/Trustee's claims, including for example the claims under 11 U.S.C. 547 (preference) and section 548 (fraudulent transfer), or if instead they want to <u>bifurcate</u> this adversary proceeding, and have the arbitration determine some aspects of the contractual disputes - perhaps the merits of the claims and defenses under the LLC Agreement, or perhaps the settlement value or range of values for such claims.
      In any event, at least unless there are very substantial and good faith contractual issues that would have enough settlement value to be "reasonably equivalent value" for the millions of dollars that appear to be at issue in the Settlement Agreement, the Complaint overwhelmingly raises bankruptcy issues.  The Complaint also seeks to enforce the vital bankruptcy policies underlying the avoidance of fraudulent and preferential transfers, including equal treatment among similarly situation creditors and the avoidance of favoritism.
      That brings the issue back to this Court's exercise of its discretion, based on whether arbitration would conflict with the underlying purposes of the Bankruptcy Code.

(6) Compelling arbitration at this time would conflict, at the very least, with the underlying transparency and investigatory purposes of the Bankruptcy Code
      The tentative ruling is that compelling arbitration at this time would, at a minimum, conflict with two fundamental principles of bankruptcy: (x) transparency, which is a goal permeating the Bankruptcy Code and Rules (s*ee, e.g.*, 11 U.S.C. 102(1) (notice and opportunity to be heard) & 521 (disclosures by debtors)), and (y) investigation – specifically, Plaintiff/Trustee's duty to "investigate the acts, conduct, assets, liabilities and

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                           Hearing Room    1545

2:00 PM
CONT...        Leslie Klein                                                    Chapter 11
financial condition of the debtor … and any other matter relevant to the case or to the formulation of a plan" (11 U.S.C. 1106(a)(3)).  In addition, as noted above, it is not entirely clear whether Defendants are envisioning that the arbitrators would or would not decide every element under 11 U.S.C. 547, 548, etc., but either alternative appears to raise conflicts with the Bankruptcy Code: either the arbitrators' role would be extremely limited and yet cause all of the disruption of bifurcating these proceedings, contrary to the Code's purpose of consolidating and streamlining proceedings, or else the arbitrators' role would be broader and they would decide issues that are not within the expertise of the arbitrators and are within the expertise of this Bankruptcy Court (11 U.S.C. 547, 548, etc.), which is, after all, why Congress established specialized bankruptcy courts.
      Moreover, Defendants skip over the step of analyzing whether there is anything to arbitrate.  The Settlement Agreement purportedly resolved some sort of contractual dispute regarding the LLC Agreement; but glaringly absent from their papers is **any description** about the nature of that dispute.  Proper distributions of insurance policy proceeds under the LLC Agreement appear to be extremely simple:

    (a) Rechnitz' initial capital contribution was $3.8 million.
           (*See* LLC Agreement section 3.1 & Ex. A (adv. dkt. 26, at PDF p. 39).)
    (b) Debtor's initial capital contribution was whatever had been paid for the insurance policies that were contributed to Life Capital (possibly $1,833,226.00, although the papers are unclear).
           (*See id. and* Schedule A-1 to LLC Agreement (column entitled "2011/12") (adv. dkt. 40, at PDF pp. 57-60).)
    (c) Any proceeds from the insurance policies would be distributed:
        (i) **first to Rechnitz in repayment of his capital contributions** plus 12% interest (the "Rechnitz Amount").
           (*See id.,* section 4.3(a) & definitions (adv. dkt 26 at PDF pp. 41 & 60).)
        (ii) **second to Debtor in repayment of his capital contributions** plus 12% interest (after repayment of roughly $2.6 million in loans) (the "Klein Amount").
           (*See id.,* & Schedule C (adv. dkt. 26 at PDF pp. 41, 59, 60 & 65).)
        (iii) **third, 50/50 between Rechnitz and Debtor**.

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                           Hearing Room    1545

2:00 PM
CONT...        Leslie Klein                                                    Chapter 11
(*See id.* section 4.1(c) (adv. dkt. 26 at PDF p. 41).)
      The Original Klein Complaint alleged that distributions had already been made, without Debtor's knowledge or consent, of $8 million (Holtzman policy), $1.5 million (Bernstein policy), and $3.5 million (Berke policy), with another pending distribution of $10 million (Gardner policy) – a total of $23 million.  Yet, according to that complaint, not only did defendants Rechnitz and Polter fail and refuse to provide Debtor with any of those proceeds, but they "essentially locked him out of [Life Capital]" and "never accounted" for the disposition of these proceeds.  *See* Original Klein Complaint pp. 6:14-8:27 (Ex. 6 to Arbitration Motion, adv. dkt. 26, at PDF pp. 95-97 of 202).
      Debtor and the other Defendants apparently resolved whatever disputes they had about these things in the Settlement Agreement.  But (w) no papers were filed in the Original Klein Action that would shed light on the nature and merits of any defenses to the Original Klein Complaint (or at least no such papers are in the record before this Court); (x) the Settlement Agreement is confidential and almost entirely redacted, so it sheds no light at all about whether there were any meritorious defenses to the Original Klein Complaint (*see* Settlement Agreement, Ex. 3 to Arbitration Motion, adv. dkt. 26, at PDF pp. 74-82); (y) Debtor filed his bankruptcy petition less than three months after executing the Settlement Agreement; and (z) Debtor did not disclose the Settlement Agreement on his Schedules and SOFA.  *See* Complaint (adv. dkt. 1), pp. 5:12-14, 8:27-28 & Arbitration Motion (adv. dkt. 26), Ex. 3, PDF pp. 75-82.
      All of these facts and circumstances justify Plaintiff/Trustee's suspicions that the Settlement Agreement might have been a constructively or actually fraudulent transfer, including that it might have been a collusive ruse by which Debtor and the other Defendants could divide millions of dollar among themselves and seek to obscure whether there was any reasonably equivalent value for their transfers.  In addition, even if the Settlement Agreement itself is not a constructive or actual fraudulent transfer, any transfers pursuant to the Settlement Agreement appear on their face to be possibly preferential.
      There are no assurances that arbitration would shed any more light on these matters - there is no indication that any proceedings would be open to Plaintiff/Trustee and to creditors generally.  Nor are there any assurances that Plaintiff/Trustee would be recognized by the arbitrators as having any standing to appear on behalf of creditors (who are non-parties to the LLC

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                       Hearing Room   1545

**2:00 PM**
**CONT...**   **Leslie Klein**                                              **Chapter 11**

Agreement and the Settlement Agreement) or that Plaintiff/Trustee would have the broad investigatory powers and tools that are available in bankruptcy.

So far as this Court can discern, from the scant information before it, any disputes under the LLC Agreement should have been resolved by a simple spreadsheet, which the Manager (Defendant Polter) should have been maintaining all along, backed up by sufficient bank records and other supporting documents to verify alleged contributions and withdrawals. The necessary calculations appear to be only addition (for any capital contributions subsequent to the date of the LLC Agreement), subtraction (for any distributions), and multiplication (for 12% interest). Nothing would appear, at least without more explanation and evidence, to warrant any difficulty in litigation or settlement, let alone millions of dollars in insurance proceeds that Debtor apparently surrendered to the other Defendants in "settlement" of alleged (but unspecified) "contractual disputes."

In keeping with this apparently simple nature of the parties' disputes, the Original Klein Complaint seeks an accounting and an inspection of books and records. That appears proper on its face. The LLC Agreement provides, for example, that the Company "shall maintain a record" of the respective capital contributions of Debtor and Defendant Rechnitz, and the Manager, Polter, "shall update" that record "from time to time to reflect changes in such information."  *See* LLC Agreement, p. 2, section 3.1 (Ex. 1 to Arbitration Motion, adv. dkt. 26, at PDF p. 39 of 202).

On what basis did Defendants fail or refuse to provide these things? If they had maintained those books and records, it should have been easy to turn them over, and if not then they would appear to be in breach of the agreement and a forensic accountant presumably could have done the math.

If Defendants' position is that the LLC Agreement actually gives Debtor only very limited access to books and records, that is all the more reason why the bankruptcy discovery powers might be necessary, either within this adversary proceeding or, if Defendants were to assert that some of their books and records are outside of the existing scope of this litigation, then under the very broad sweep of Rule 2004 (Fed. R. Bankr. P.). In contrast, Defendants fail to offer any information about how the arbitration proceedings would provide transparency or investigative tools for Plaintiff/Trustee (assuming for the sake of discussion that he would even be recognized as having standing to participate in those proceedings).

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                       Hearing Room   1545

**2:00 PM**
**CONT...**   **Leslie Klein**                                              **Chapter 11**

The bottom line is that, on the present record, Defendants have failed to support their assertion that Plaintiff/Trustee's claims rest on substantial and good faith contract disputes, let alone any that might have sufficient merit to amount to "reasonably equivalent value" or that would otherwise support cognizable defenses to Plaintiff/Trustee's claims, so it is not clear that there is anything material to arbitrate. Alternatively, whatever the undisclosed nature of the parties' alleged contractual disputes, it would undermine the critical Bankruptcy Code policies of transparency and full investigation to send this matter to arbitration, at least until Plaintiff/Trustee is able to make up for Defendants' lack of transparency by using the bankruptcy powers and tools for investigation.

Alternatively, as noted at the start of this section, the tentative ruling is that compelling arbitration would conflict with other critical policies of the Bankruptcy Code. Granting such relief to Defendants either would bifurcate these proceedings between this Court and the arbitration panel, or it would delegate to the arbitration panel matters that are within the expertise of this specialized Bankruptcy Court.

Notwithstanding all of the foregoing, it is conceivable that, once Plaintiff/Trustee has been able to complete his investigation, it will turn out that there are substantial, good faith contractual disputes that might have a value reasonably equivalent to what Debtor gave up in the Settlement Agreement, and that can be adjudicated by the arbitration panel without unduly conflicting with the policies of the Bankruptcy Code. Therefore, in an exercise of caution, the tentative ruling is not to deny the Arbitration Motions outright but instead to continue them, to see the results of the investigation by Plaintiff/Trustee.

(7) There is no equitable estoppel bar to Plaintiff/Trustee's Complaint

The tentative ruling is that Plaintiff/Trustee is not attempting to "have it both ways" on any issue. The overwhelming weight of the Complaint is seeking to enforce the Bankruptcy Code. As such, he is not standing in Debtor's shoes and simultaneously seeking to enforce part of the LLC Agreement and Settlement Agreement while disavowing another part (arbitration). Rather, he is standing in creditors' shoes and attempting to enforce bankruptcy powers to avoid fraudulent and preferential transfers.

(8) Conclusion

---

**United States Bankruptcy Court**
**Central District of California**
Los Angeles
Neil Bason, Presiding
Courtroom 1545 Calendar

Tuesday, August 12, 2025                                       Hearing Room   1545

**2:00 PM**
**CONT...**   **Leslie Klein**                                              **Chapter 11**

For the reasons set forth above, the tentative ruling is to decline to grant the Arbitration Motions on the present record, and to continue these matters for several months, so that Plaintiff/Trustee can conduct discovery. The tentative ruling is to set a **continued hearing on 9/23/25 at 2:00 p.m., with a joint status report due 9/9/25**, and no additional briefing is invited or permitted on the arbitration issues. This Court can determine at the continued hearing whether any additional briefing or other procedures are needed before a final ruling on the Arbitration Motions.

| Party Information |
|---|

**Debtor(s):**

| | |
|---|---|
| Leslie  Klein | Pro Se |

**Defendant(s):**

| | |
|---|---|
| Life Capital Group, LLC | Represented By<br>Michael G D'Alba |
| Shlomo Y. Rechnitz | Represented By<br>Matthew A Lesnick |
| Yisroel Zev Rechnitz | Represented By<br>Matthew A Lesnick |
| Chaim  Manela | Represented By<br>Matthew D. Resnik<br>M. Jonathan Hayes |
| Jonathan  Polter | Represented By<br>Michael G D'Alba |
| Security Life Of Denver Life | Pro Se |

**Movant(s):**

| | |
|---|---|
| Life Capital Group, LLC | Represented By<br>Michael G D'Alba |
| Jonathan  Polter | Represented By<br>Michael G D'Alba |